## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TONY E. BRANTLEY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-08-566-F** |
| | ) | |
| **MARTY SIRMONS, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. United States District Judge Stephen P. Friot referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Respondent has filed a response to which Petitioner has replied. Thus, the merits of the petition are at issue. For the following reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges his convictions for manufacturing methamphetamine, possession of methamphetamine, and possession of marijuana, for which he was sentenced to a total of 86 years imprisonment. Case No. CF-2004-2261, District Court of Oklahoma County; Petition, pp. 1-2. On direct appeal the Oklahoma Court of Criminal Appeals affirmed Petitioner's convictions and sentences in a summary opinion. <u>Id.</u> at 2; <u>Brantley v. State</u>, No. F-2005-872 (Okla. Crim. App. Apr. 17, 2007) (attached to Petition as Ex. G and Response as Ex. 3). Petitioner applied to the trial court for post-conviction relief which was denied. Petition, p. 3-4, Exs. H, I; Response, Ex. 4. Petitioner

appealed the denial to the Oklahoma Court of Criminal Appeals which affirmed the trial court's decision.  Petition, p. 5; Brantley v. State, No. PC-2007-0960 (Okla. Crim. App. Nov. 27, 2007) (attached to Petition as Exs. J, K and Response as Ex. 5).

Petitioner organizes his arguments into a total of ten grounds for relief.  In Grounds One, Two, and Three, Petitioner alleges violations of his Fourth Amendment rights to be free from unreasonable searches and seizures.  Petition, pp. 7-18. In Ground Four, Petitioner contends the evidence is insufficient to support his convictions.  Id. at 19-24.  In Ground Five, Petitioner complains that he was improperly impeached. Id. at 24-28.  For Grounds Six and Seven, Petitioner challenges the trial court's jury instructions.  Id. at 29-34.  In Ground Eight, Petitioner alleges his trial counsel rendered ineffective assistance. Id. at 34-36. As for Ground Nine, Petitioner claims the cumulative effect of the aforementioned errors warrants relief.  Id. at 36-38. Finally, in Ground Ten, Petitioner asserts that the existence of newly discovered evidence necessitates relief.  Id. at 38-43.

## I.    BACKGROUND

On April 7, 2004, Oklahoma City Police Officers Jim Hatfield and David Wegner answered a radio call regarding a suspicious vehicle parked at 2409 South Hudson in Oklahoma City.  Vol. 2 Tr. 37-38, 43-44.  Officer Wegner spoke with a man inside the vehicle who advised that he was watching individuals in a residence at 2312 South Hudson because he believed they were manufacturing methamphetamine.  Vol. 2 Tr. 45. Officers Hatfield and Wegner turned toward the residence at 2312 South Hudson, a two-story apartment building with a ground-level and upstairs unit, and as they approached it, they

detected a strong chemical odor associated with methamphetamine laboratories.  Vol. 2 Tr. 38, 46-48.   Officers Hatfield and Wegner approached a fenced yard surrounding the apartments and came upon two men standing in the yard along with a pit bull.  Vol. 2 Tr. 40. As the officers began speaking with the men, Petitioner exited the ground level apartment, which belonged to a woman named Honey Glidewell, and entered the yard.  Vol. 2 Tr. 40-41, 46-48; Vol. 3 Tr. 28.

Officer Wegner asked the three men to step out from the fenced yard away from the pit bull, and placed them under investigative detention.  Vol. 2 Tr. 46.  Initially, Petitioner told Officer Wegner that no other individuals were inside Glidewell's apartment, and he was placed in the back seat of Officer Wegner's patrol car.  Vol. 2 Tr. 48.  As the officers were standing outside looking around the house, the pit bull became very vicious.  Vol. 2 Tr. 48. Petitioner got the officers' attention and advised them that an individual named Dale Grayson lived in the upstairs apartment and could take care of the pit bull.  Vol. 2 Tr. 49.  Officers shouted to the upstairs apartment advising that they were the police and that they were there. Vol. 2 Tr. 49.  Grayson emerged from his upstairs apartment and at the same time three individuals, Mary Howe, Donald Foglesong, and Honey Glidewell, exited from the downstairs apartment.  Vol. 2 Tr. 49.

Shortly thereafter, Officer Matthew Guy arrived to provide backup assistance.  Vol. 2 Tr. 61.  As he was walking up to the residence, he also detected a strong chemical odor emanating from the house.  Vol. 2 Tr. 61.  Officer Guy waited while people exited the downstairs apartment unit and then led a HAZMAT Unit to secure the premises.  Vol. 2 Tr.

51, 63-64.  During his sweep of the apartment, Officer Guy observed clutter, glass tubes, and plastic tubing laying about the apartment, chemicals associated with the manufacture of methamphetamine, syringes, coffee filters, and glass jars, some of which were filled with liquid.  Vol. 2 Tr. 65-68.  Once the premises was secured, the HAZMAT Unit cleared the premises of harmful substances, Vol. 2 Tr. 63-64, and Inspector Mark Danner with the Oklahoma City Police Department Special Projects Group investigated the scene.  Vol. 2 Tr. 81.  Inspector Danner and his team discovered numerous items associated with the process of manufacturing methamphetamine all throughout the house and yard, including precursor chemicals and ingredients, glass jars containing various liquids associated with manufacturing methamphetamine, and materials and supplies used to facilitate the manufacturing process.  Tr. 83-102.  They also discovered a couple of firearms in the residence.  Vol. 2 Tr. 102-103.  In the bedroom of the apartment, officers discovered a briefcase containing used coffee filters, white chemical residue, unused syringes, lithium batteries, a scale, and a bag holding several documents.  Vol. 2 Tr. 103.  One of those documents was a letter from a woman addressed to a person named Tony, which is Petitioner's first name.  Vol. 2 Tr. 116; 141, Ex. 34.

In addition to searching the residence, police also searched a garage attached to the apartment building. Because the garage was not accessible from inside the residence, police obtained a key from Petitioner to enter the garage.  Vol. 2 Tr. 106-107.  Inside the garage, they again found numerous items employed in the process of manufacturing methamphetamine, along with a radio scanner capable of scanning police radio calls, and

marijuana.  Vol. 2 Tr. 109-114.  Officers also found two of Petitioner's pay stubs in the garage.  Vol. 2 Tr. 116, 138.  Testing eventually demonstrated that several of the items recovered at the scene were chemical ingredients used in the process of manufacturing methamphetamine, byproducts of the process, actual, completed methamphetamine, and marijuana.  Vol. 3 Tr. 14-17.

Petitioner testified at his trial.  He explained that he rented the garage space attached to the apartment units located at 2312 South Hudson and operated an auto repair shop from it, but that the tenants of the apartments also had access to the garage because it housed their laundry facilities.  Vol. 3 Tr. 29-30, 34-36.  According to Petitioner, on the evening of April 7, 2004, one of his customers, Don Foglesong, called him to see if he could retrieve his car that evening because he needed it.  Petitioner testified he drove to the garage to get Foglesong's keys and return the vehicle to him.  Vol. 3 Tr. 31-32.  When Petitioner arrived at the garage, he retrieved Foglesong's keys from a lockbox.  Vol. 3 Tr.  33.  Petitioner saw a van belonging to Foglesong parked out front, but he did not see Foglesong, so he knocked on the door of Glidewell's apartment looking for him.  Vol. 3 Tr. 32, 37-40.  Glidewell, Petitioner's girlfriend, opened the door, and Petitioner stepped inside and found Mr. Foglesong.  According to Petitioner, he and Foglesong were discussing repairs to be completed on Foglesong's van at the time police arrived.  Vol. 3 Tr. 41-43.

Petitioner admitted that some marijuana seeds found in the garage belonged to him, but denied possessing any methamphetamine or having any involvement with the methamphetamine laboratory found on the premises.  Vol. 3 Tr. 46-47.  On cross-

examination, the prosecution elicited evidence indicating that Petitioner previously had been arrested and that when the police searched him, they found methamphetamine and marijuana on his person.  Vol. 3 Tr. 56.  During cross-examination, Petitioner also admitted that a few months earlier, he told police that there was a methamphetamine laboratory in Ms. Glidewell's apartment that belonged to him, and he executed a search warrant waiver authorizing them to search it.  Vol. 3 Tr. 54-55, 59.

## II.    STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case.  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

6

relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

If a state court resolves issues in a summary disposition with little or no legal reasoning, a federal habeas court still owes deference to the result. Paine v. Massie, 339 F.3d 1194, 1198 (10th Cir. 2003).  A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." Id. (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).

## III.   DISCUSSION

### 1.      Fourth Amendment Violations

In the first three grounds of the petition, Petitioner asserts various violations of his Fourth Amendment right to be free from unreasonable searches and seizures, and violations of Oklahoma constitutional provisions as well.  Specifically, in Ground One, he contends that police unlawfully searched the house and seized certain items prior to obtaining a warrant. Petition, p. 7-10.   In Ground Two, Petitioner complains that the search warrant did not authorize police to search him, so the removal of the garage key from his person illegally exceeded the warrant's authorization. Id. at 11.  He additionally complains that statements in the affidavit supporting the warrant application were false which vitiated the existence of probable cause to arrest him. Id. at 14.  As for Ground Three, Petitioner complains that the search of the garage was illegal because the warrant did not specifically authorize police to search it. Id. at 15-16.  He also complains that the supporting affidavit was not specific

enough to justify the issuance of the warrant.  Id. at 16-18.

Petitioner raised these claims on direct appeal.[1]  See Response, Ex. 1, pp. 5-16, Ex. 3, p. 2.  The Oklahoma Court of Criminal Appeals rejected each.  Id. at Ex. 3, pp. 3-4. Specifically, as to Petitioner's claim presented in Ground One, they found Petitioner had not established standing to challenge the validity of the search.  Id. at 3.  As to Petitioner's claims in Ground Two, they concluded that the seizure of the garage key was permissible because it was taken after a valid arrest.  Id.  Finally, addressing the claims raised in Ground Three, the Oklahoma Court of Criminal Appeals determined that Petitioner failed to demonstrate that the officers serving the warrant exceeded its scope by searching the garage because the garage was within the curtilage of the apartment named in the warrant.  Id. at 4-5.

Respondent argues that the claims Petitioner makes in Grounds One through Three are not reviewable in a § 2254 action because they were fully and fairly litigated in state court.  Response, p. 3.  In his reply, Petitioner essentially re-argues the Fourth Amendment claims raised in the petition and ignores Respondent's argument that the claims have been fully and fairly litigated, except to contend that his trial counsel's ineffectiveness prevented the issues from being fully and fairly considered.  Reply, pp. 2-5.

In Stone v. Powell, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,

---

[1]Although Petitioner filed an application for state post-conviction relief, the only claim Petitioner presented in that application was a request for the appointment of counsel to assist him with pursuing post-conviction relief.  Response, Exs. 4-5.  Thus, the Oklahoma Court of Criminal Appeals' summary opinion from Petitioner's direct appeal represents the highest state court's most recent consideration of the issues presented in the petition.

a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."   Such opportunity may be provided either at trial or on direct review.  Stone, 428 U.S. at 494-95 n.37 ("we hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review.").  See also Chavez v. Rodriguez, 540 F.2d 500, 502 (10th Cir. 1976) (per curiam) (holding that a hearing on a motion to suppress and the consideration of the issue on appeal satisfied "[t]he dictates of Stone."); Brown v. Sirmons, 515 F.3d 1072, 1082-83. (10th Cir. 2008), cert. denied 129 S.Ct. 403 (2008).

As Respondent contends, the Fourth Amendment violations Petitioner alleges in Grounds One through Three  do not warrant federal habeas relief because Petitioner had a full and fair opportunity to litigate these claims in state court.  At Petitioner's preliminary hearing, counsel presented witnesses and the trial court heard evidence pertaining to the charges, including information about the search of Petitioner and the premises, and the seizure of items of evidence.  Vol. 1, Tr. 13-16.  Prior to trial, Petitioner's counsel moved to suppress the drugs and precursor items located in the shed, based upon an argument that the search of the shed exceeded the scope of the warrant to search Glidewell's apartment.  Vol 1. Tr. 6-8.  Petitioner's counsel and the prosecution each presented arguments to the trial court who, based upon the evidence presented at the preliminary hearing, denied Petitioner's motion.  Tr. 6-18.  Petitioner also raised and briefed the Fourth Amendment issues raised in

Grounds One through Three on direct appeal, Response, Ex. 1, pp. 5-16.  The Oklahoma Court of Criminal Appeals considered them, and rejected them all on the merits.  Id. at Ex. 3, pp. 3-4.  Petitioner thus has had a full and fair opportunity to litigate these claims in state court and they should not be heard in this § 2254 proceeding.  See Stone, 428 U.S. at 494-95. Accordingly, Grounds One through Three do not merit relief.

###### 2.        Sufficiency of the Evidence

In Ground Four, Petitioner argues that the evidence supporting his convictions is insufficient.  Petition, p. 19.  In particular, Petitioner contends there was no evidence that he knowingly possessed methamphetamine because the State did not introduce any evidence affirmatively linking him to the methamphetamine discovered inside Glidewell's apartment. Petition, pp. 21-22.  Additionally, Petitioner complains there was no evidence demonstrating that he actively participated in or aided and abetted the methamphetamine manufacturing occurring at 2312 South Hudson.  Id. at 22.

The Oklahoma Court of Criminal Appeals considered these arguments on direct appeal and rejected them, remarking that the evidence, if viewed in the light most favorable to the State, was sufficient for any rational trier of fact to find the essential elements of the offenses beyond a reasonable doubt.  Response, Ex. 3, p. 5.  Respondent contends that the Oklahoma Court of Criminal Appeals' resolution of Petitioner's sufficiency of the evidence claim is not contrary to or an unreasonable application of clearly established federal law. Response, p. 5.  Respondent argues that the Court owes deference to the state court's resolution of Petitioner's claim because the evidence was sufficient to permit a reasonable

jury to infer Petitioner's guilt and, based upon their verdict, the jury clearly resolved factual questions in the State's favor.  Id. at 6-9.  Petitioner's reply contests the accuracy of the jury's verdict and of the Oklahoma Court of Criminal Appeals' resolution of his sufficiency of the evidence claims by reviewing certain evidence introduced at trial and contending that it did not support a finding of guilt beyond a reasonable doubt.  Reply, pp. 5-9.

In reviewing the sufficiency of evidence, the relevant question under clearly established Supreme Court precedent "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); Romano v. Gibson, 239 F.3d 1156, 1164 (10th Cir. 2001).  A reviewing court should not weigh conflicting evidence or consider the credibility of witnesses.  See Jackson, 443 U.S. at 319;  Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).  Rather, the court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs, 982 F.3d at 1487.

Section 2254(d) substantially limits the scope of federal habeas review of challenges to the sufficiency of the evidence where, as here, the state court decided the issue on the merits.  Valdez v. Ward, 219 F.3d 1222, 1237 (10th Cir. 2000).  Under § 2254(d), a habeas petitioner is not entitled to relief unless the state court unreasonably determined that the evidence was sufficient which "amounts to deference squared."  Torres v. Lytle, No.

03-2098, 90 Fed. Appx. 288, 290 (10th Cir. Jan. 23, 2004)[2]; see also Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003).   It is not clear whether sufficiency of the evidence questions are "legal," and reviewed pursuant to § 2254(d)(1) for the unreasonable application of clearly established federal law, or "factual" and subject to review under § 2254(d)(2) for the reasonableness of the determination of the facts in light of the evidence.  Willingham v. Mullin, 296 F.3d 917, 929-30 (10th Cir. 2002); Jones v. McKune, No. 06-3342, 214 Fed. Appx. 784, 786 (10th Cir. Jan. 26, 2007).  Whichever standard governs though, a federal habeas court's inquiry is "limited to determining whether the [state court] applied a standard that was contrary to that for sufficiency of the evidence as set forth in Jackson or whether it unreasonably applied the Jackson standard itself to the facts of this case." Jones, 214 Fed. Appx. at 786.   Applying either § 2254(d)(1) or (d)(2), Petitioner is not entitled to relief.

The Oklahoma Court of Criminal Appeals applied it decision in Easlick v. State, 90 P.3d 556 (Okla. Crim. App. 2004) (adopting standard enunciated in Spuehler v. State, 709 P.2d 202 (Okla. Crim. App. 1985)), and thereby effectively reviewed Petitioner's sufficiency of the evidence claim under Jackson.   See Torres, 317 F.3d at 1152 n.3.  The Court of Criminal Appeals' application of Jackson was not unreasonable.

To obtain a conviction for manufacturing a controlled dangerous substance, there must be proof beyond a reasonable doubt that the defendant: (1) knowingly or intentionally, (2) manufactured or attempted to manufacture, (3) a controlled dangerous substance (such as

---

[2]This and any other unpublished disposition cited pursuant to Fed. R. App. P. 32.1 and Tenth Circuit Rule 32.1.

methamphetamine).  See Okla. Stat. tit. 63, § 2-401(G)(1); see also OUJI-CR 2d § 6-3.  A conviction for possession of a controlled dangerous substance must be supported with proof beyond a reasonable doubt that the defendant: (1) knowingly and intentionally, (2) possessed, (3) a controlled a dangerous substance.  See Okla. Stat. tit. 63, § 2-402(A); see also OUJI-CR 2d § 6-6.  A misdemeanor conviction for possession of marijuana is established with proof of the defendant's: (1) knowing and intentional. (2) possession of, (3) marijuana.  See Okla. Stat. tit. 63, § 2-402(B)(2); see also OUJI-CR 2d § 6-6.

Contrary to Petitioner's claims, and as the Oklahoma Court of Criminal Appeals found, the evidence adduced at trial, viewed in the light most favorable to the prosecution, amply demonstrated Petitioner's guilt.  In particular, there was sufficient evidence showing that Petitioner knowingly and intentionally possessed methamphetamine and marijuana, and sufficient evidence that he knowingly or intentionally manufactured or attempted to manufacture methamphetamine.  As to the possession of marijuana conviction, the evidence demonstrated that when the garage Petitioner used for his auto repair shop was searched, approximately 3 ounces of marijuana was discovered inside a ziploc baggie located in a black travel bag on the floor of the garage.  Vol. 2 Tr. 112-114, Vol. 3 Tr. 29.  Police also discovered marijuana seeds, which Petitioner admitted belonged to him, along with Petitioner's pay stubs in a toolbox.  Vol. 2 Tr. 116, 135, 137, 166-67, Vol. 3 Tr. 47.  At the time of his arrest, Petitioner had the key to the lock on the garage on a key ring attached to his belt loop.  Vol. 2 Tr. 106-107.  Further, Petitioner testified that he had been in the garage all day on the date in question.  Vol. 3 Tr. 29-30. Viewed in the light most favorable to the

prosecution, this evidence, though circumstantial, was sufficient for the jury to infer that Petitioner knowingly and intentionally possessed the marijuana found in the garage because it established Petitioner's knowledge of the presence of drugs, and his ability and intent to control their disposition.  See, e.g., Hill v. State, 898 P.2d 155, 166 (Okla. Crim. App. 1995) (noting that Oklahoma law permits conviction for possession based upon constructive possession, which may be established by circumstantial evidence of the defendant's knowledge of the presence of drugs and the power and intent to control their disposition).

Similarly, with respect to the possession of methamphetamine conviction, the evidence demonstrated that methamphetamine was discovered in the bedroom of Petitioner's girlfriend's apartment inside a black travel bag, Vol. 2 Tr. 99-101, Vol. 3 Tr. 35, 49, and in the yard of the apartment which contained a garage that Petitioner rented. Vol. 2 Tr. 87-88. In the same bedroom where methamphetamine was found, police also discovered a maroon briefcase on the floor which contained a letter addressed to "Tony," Petitioner's first name. Vol. 2 Tr. 103, 116.  Petitioner's own testimony established that he had stayed overnight at the apartment several times, that he executed a waiver authorizing a search of Ms. Glidewell's apartment in December 2003, and that he admitted to owning items discovered in the apartment during that search.  Vol. 3 Tr. 49-50, 52-55, 58-59.  The first officers on the scene observed Petitioner come out of the apartment and according to the officers Petitioner denied anyone else was in the apartment.  Vol. 2 Tr. 40, 46, 48.  Petitioner also warned the other occupants of the apartment that the police were outside.  Vol. 3 Tr. 42-43.  This evidence, if viewed in the light most favorable to the prosecution, establishes Petitioner's

14

knowing and intentional possession of the methamphetamine because methamphetamine was discovered in the apartment as well as evidence that it was being manufactured.  From this, a reasonable jury could infer that the methamphetamine in the bedroom belonged to Petitioner and that Petitioner was  aware of the presence of the methamphetamine and had the ability to control its disposition.  Accordingly a jury could find him guilty beyond a reasonable doubt.

Insofar as Petitioner's manufacturing conviction is concerned, there was also sufficient evidence of  guilt.  The evidence at trial demonstrated that ingredients, instruments, and byproducts of the process of manufacturing methamphetamine were found scattered in plain view throughout Petitioner's garage, inside his girlfriend's apartment, and in the front yard.  Vol. 2 Tr. 83-102, 105-12.  Many of these items bore the indicia that they had been used to manufacture methamphetamine, Vol. 2 Tr. 88-89, 109, 111-12, and police also discovered several jars full of liquids undergoing the process of being manufactured into methamphetamine.  Vol. 2. Tr. 87-88.

For example, in the garage that Petitioner had been in all day on the date police searched it, police discovered a wall of jars full of liquids and tubing that someone attempted to partially conceal by placing a net over it.  Vol. 2 Tr. 108-109.  They also discovered hot plates, beakers, jars, syringes, coffee filters, stained tubing, and cook pans with residue laying on the floor in plain view, and the State introduced testimony explaining how these items indicated that methamphetamine was being manufactured.  Vol. 2 Tr. 109-11.  On the floor of Petitioner's garage, police also found containers holding several ingredients of and

byproducts produced in the process of manufacturing methamphetamine, and jars full of multi-layered liquids. Vol. 2 Tr. 111-12. They also discovered a radio scanner capable of scanning police radio calls, and the State's witnesses explained how these items suggested that the garage was used to manufacture methamphetamine. Vol. 2 Tr. 110-11.

In Petitioner's girlfriend's house, "there [were] literally methamphetamine lab components in every room of the house," Vol. 2 Tr. 94, 144, including jars filled with liquids in the bathroom and bathtub, filters, pans, and ingredients laying on the living room floor, and jars and equipment inside the kitchen cabinets and in other parts of the kitchen. Vol. 2 Tr. 88-98. Further, in the bedroom, police found a travel bag filled with ingredients and instruments used in the process of manufacturing methamphetamine, syringes, scales, a pipe, and a baggie with residue, all of which are associated with methamphetamine use and manufacturing. Vol. 2 Tr. 99-101. Petitioner also testified that the apartment was very small and that he had been in the apartment during the day at times. Vol. 3 Tr. 41, 50. There was also evidence that when the police arrived, Petitioner lied to them about whether anyone else was in the apartment from which he emerged, and he alerted the other occupants that the police were there. Vol. 2 Tr. 47-49; Vol. 3 Tr. 42-43.

When this evidence is viewed in the light most favorable to the prosecution, it, and the inferences that can be drawn from it, establish that Petitioner knowingly or intentionally, manufactured or attempted to manufacture methamphetamine. Evidence of manufacturing was all over Petitioner's garage and his girlfriend's apartment in plain view. Petitioner had been in his garage all day up until only a few hours before police arrived, he had been in Ms.

Glidewell's apartment and he stepped out from her apartment at the time police arrived.  This evidence supports an inference of Petitioner's knowledge of and participation in the methamphetamine manufacturing occurring on the premises.  Additionally, his attempt to conceal the fact that other people were in Ms. Glidewell's apartment when police arrived further indicates a consciousness of guilt about the ongoing manufacturing activities.  Taken together, a rational jury could easily infer that Petitioner knowingly or intentionally manufactured or attempted to manufacture methamphetamine.

On habeas review, the Court may not, as Petitioner urges it to do, weigh conflicting evidence or consider the credibility of witnesses; instead the Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs, 982 F.2d at 1487.  The Oklahoma Court of Criminal Appeals' decision is not contrary to nor an unreasonable application of Jackson.  Accordingly, Petitioner's challenge to the sufficiency of the evidence supporting his convictions does not entitle him to § 2254 relief.

### 3.    Evidentiary Rulings

In Ground Five, Petitioner challenges several of the trial court's evidentiary rulings. During the defense case-in-chief, Petitioner testified that he lived in Dibble, Oklahoma, and did not reside in Ms. Glidewell's apartment.  Vol. 3. Tr. 27-28, 46.  On cross-examination, the prosecutor asked Petitioner whether he kept any of his possessions inside Ms. Glidewell's apartment, and whether he had ever claimed any sort of ownership interest in her apartment. Vol. 3 Tr. 50-51.  Petitioner stated that he had not.  Vol. 3. Tr. 50-51.  The prosecutor then asked:

Q.      Sir, have you ever signed any document which would indicate your
        right to either give individuals access to that apartment or keep
        individuals out of it?

A.      No, sir.

Vol. 3 Tr. 51.  Thereafter, the prosecutor showed Petitioner a copy of a search waiver he

signed in December of 2003, which gave the police permission to search Ms. Glidewell's

apartment.  Vol. 3 Tr. 52-54.[3]  The prosecutor continued on:

Q.      So when you told this jury and this Court that you never signed a
        document authorizing any individual to either enter your premises or
        not with regards to Apartment A, you were lying; is that fair to say?

A.      Well, as – I guess you can say that I misunderstood it. I mean I did sign
        the search warrant, the waiver, but [at the] time I was signing it, I
        thought it was for my garage, for the premises of the garage, not the
        apartment.

* * *

Q.      Sir, you just told us a moment ago that you've never had any of your
        items inside Apartment A at 2312 South Hudson, is that correct?

A.      Yes, sir.

Q.      Well, sir on 12-30 of '03 at approximately 2:40, did you or did you not
        tell officers that you did have items inside that apartment?

A.      I can't remember for sure.

Q.      Well, sir, did you tell them that there was a gun inside that apartment?

---

[3] Page 53 from Volume 3 of the trial transcript is not included in the copy of the state court
records filed in this action.  However, the undersigned has not required Respondent to supplement
the record because Petitioner's evidentiary claims can be properly resolved without the missing
transcript page.

    A.      No, sir.

    Q.      Sir, did you tell them that there was a meth lab inside that apartment?

    A.      I would say I probably did, yes, I did.

    Q.      And, sir, did you also tell them that it was your meth lab?

    A.      That I'm not sure on, if I did or not.

Vol. 3 Tr. 54-55.  At a later point during cross-examination, the following exchange occurred

between the prosecutor and Petitioner:

    Q.      Sir, on December 30th of 2003, do you remember making statements to police concerning your possession of items within [Ms. Glidewell's] residence?

    A.      Explain that, please.

    Q.      Sir, do you remember making statements to police telling them that you did indeed possess items within Apartment A at 2312 South Hudson?

    A.      What I do remember is telling them that the apartment didn't belong to me.

    Q.      Sir, do you remember telling them that the meth lab inside was indeed yours?

    A.      Yes, sir, I sure did.

Vol. 3 Tr. 58-59.

Petitioner complains that the trial court improperly allowed the prosecutor to impeach

him with extrinsic evidence demonstrating that he signed a search waiver authorizing a

search of Ms. Glidewell's apartment.  Petition, pp. 25-27.  He further complains that the

prosecutor was improperly permitted to inquire into the circumstances surrounding the

execution of the waiver which introduced evidence of other crimes and bad acts and evidence whose probative value was substantially outweighed by the danger of unfair prejudice. Id. at 27. According to Petitioner, these erroneous evidentiary rulings deprived him of a fundamentally fair trial. Id. at 28.

The Oklahoma Court of Criminal Appeals determined that "the trial court did not abuse its discretion in allowing a thorough cross-examination of [Petitioner] when he chose to testify in his own defense. Furthermore, the jury's use of this evidence introduced through cross-examination was properly channeled by the instructions given by the trial court." Response, Ex. 3, pp. 5-6 (citations omitted). Respondent contends that the evidentiary issues raised in Ground Five are matters of state law and, therefore, are not subject to federal habeas review. Response, pp. 9-10. Respondent also contends that the impeachment was conducted properly according to Oklahoma evidentiary rules, and notes that the trial court issued limiting instructions designed to prevent the jury from considering the December 2003 incident as evidence of Petitioner's guilt of the charged offenses. Id. at 10-11.

As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002) ("Generally speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief."). On habeas review, this Court can only review state court evidentiary rulings "'to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" Hooker v. Mullin, 293

F.3d 1232, 1238 (10th Cir. 2002) (quoting Williamson v. Ward, 110 F.3d 1508, 1522 (10th Cir. 1997)).  In other words, federal habeas relief does not lie for errors of state law absent a determination that the state court's finding was so arbitrary and capricious as to constitute an independent due process violation.  Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  Thus, Petitioner's burden is a heavy one; he must show that the state's failure to follow its own law is arbitrary in the constitutional sense, that is, it must shock the judicial conscience.  Aycox v. Lytle, 196 F.3d 1174, 1180 (10th Cir.1999).

"Because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint."  Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks and citation omitted).  The "[i]nquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner . . . [and] [a]ny cautionary steps - such as instructions to the jury - offered by the court . . . ."  Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002).

Even assuming for the moment that the evidentiary ruling was a misapplication of state law, it did not deprive Petitioner of a fundamentally fair trial.  For one, as the previous discussion of the sufficiency of the evidence demonstrates, the State introduced a significant amount of evidence tending to show Petitioner's guilt.  As noted, in the garage that Petitioner acknowledged belonged to him, police found all sorts of chemicals and instruments used to manufacture methamphetamine, several of which bore indicia that they had been so used.

In contrast, the search waiver was relevant only to the limited issue of whether, and to what extent, Petitioner had an ownership interest in Glidewell's apartment where additional methamphetamine and methamphetamine laboratory components were discovered. Furthermore, given that Petitioner chose to testify at his trial, he assumed some risk that the State would introduce evidence bearing on his credibility which would not have been relevant if he had not testified.

It is also significant that at the time the State impeached Petitioner's testimony with the search waiver, Petitioner had an opportunity to explain why he signed the search waiver and to tell the jury that he thought it pertained only to his garage and that he did not intend to assert any ownership interest in Ms. Glidewell's apartment by executing the waiver. Vol. 3 Tr. 54. Finally, the trial court instructed the jury about the proper use of impeachment evidence in the written instructions, O.R. 178, which the jury is presumed to have followed. Weeks v. Angelone, 528 U.S. 225, 234 (2000). These factors significantly mitigated any error that may have occurred by admitting evidence related to Petitioner's execution of the search waiver. Thus, assuming for argument's sake that evidence pertaining to the search waiver was erroneously admitted, it did not deprive Petitioner of a fundamentally fair trial and does not warrant federal habeas relief.

### 4.     Jury Instructions

For his sixth and seventh grounds, Petitioner challenges the Court's instructions to the jury. Specifically, in Ground Six, Petitioner argues that the jury instructions regarding the proper use of impeachment evidence were confusing and did not adequately recite the law,

and thus deprived him of a fair trial.  Petition, p. 29.  In particular, Petitioner explains that it was incorrect to instruct the jury that evidence concerning other crimes could be used to assess his credibility.  Id. at 29-30.  As to Ground Seven, Petitioner complains that the trial court gave  a non-uniform instruction concerning circumstantial evidence that did not reflect the law as it existed at the time of his arrest.  Id. at 31.  He explains that the trial court gave an instruction based upon dicta found within Easlick v. State, 90 P.3d 556, 559 (Okla. Crim. App. 2004), and did not explain why the uniform instruction concerning circumstantial evidence in effect at the time Easlick was decided did not accurately state the law.  Id. at 33.

Petitioner presented these very arguments on direct appeal, and the Oklahoma Court of Criminal Appeals rejected both.  As to the point raised in Ground Six, the Oklahoma Court of Criminal Appeals determined "that the instructions given at the request of defense counsel were properly given and [Petitioner] cannot now complain about the instruction he requested."  Response, Ex. 3, p. 6.  With respect to the complaint raised in Ground Seven, the Oklahoma Court of Criminal Appeals found "that the instruction regarding the burden of proof, which was announced in *Easlick*, was properly given by the trial court."  Id.

Respondent notes that an erroneous jury instruction warrants federal habeas relief only in the rare instance that the instruction violated the petitioner's federal constitutional rights.  Response, pp. 12-13.  Respondent contends that Petitioner's complaint regarding the other crimes evidence instruction does not merit relief because the instruction was proper and because Petitioner's attorney requested it, thus making any error in giving it an invited error and  an improper basis for granting federal habeas relief.  As to Petitioner's Ground Seven

claim regarding the circumstantial evidence instruction, Respondent notes that the instruction is derived from United States Supreme Court precedent concerning sufficiency of the evidence and, therefore, does not provide a basis for granting federal habeas relief.

Errors relating to jury instructions in a state criminal trial are not reviewable in a federal habeas corpus action "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)).  As emphasized by the Supreme Court in Henderson v. Kibbe, 431 U.S. 145, 154 (1977), "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("The question . . . is not whether the [challenged] instruction is undesirable, erroneous, or even universally condemned, but whether the instruction so infected the trial that the resulting conviction violates due process.") (internal quotations omitted).   Thus, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004).  Further, "'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" Boyde v. California, 494 U.S. 370, 378, (1990) (quoting Cupp, 414 U.S. at 146-47).

The instruction error alleged in Ground Six does not entitle Petitioner to habeas relief; indeed, Petitioner's briefs here and on direct appeal do not explain exactly why, as he contends, the  instruction was erroneous such as to deny him a fair trial.  See Response, Ex.

24

1, pp. 27-29; Petition, pp. 29-30.  Instead, in making the arguments in support of this ground for relief, Petitioner appears more to be reasserting his claim that the State should not have been permitted to impeach him with evidence that he signed the search waiver.  See Petition, pp. 29-30.  For the previously discussed reasons, that argument lacks merit.  Further, the instruction Petitioner challenges in Ground Six, Instruction No. 7, directly tracked the language of Oklahoma's uniform jury instruction concerning impeachment evidence of prior bad acts.  Compare O.R. 178, with OUJI CR 9-21.  Petitioner does not elaborate on his claim that this instruction misstates the law.

In any event, as Respondent and the Oklahoma Court of Criminal Appeals observed, Petitioner's attorney requested the instruction he challenges in Ground Six, see Tr. III 67, rendering it impossible to grant habeas relief on the basis of the allegedly improper instruction.  See Parker v. Champion, 148 F.3d 1219, 1222 (10th Cir. 1998) ("[I]nvited error precludes . . . the grant of any habeas relief, on the basis of the alleged improper instruction.").

Similarly, in making arguments in support of Ground Seven, Petitioner does not explain how it was erroneous to give a circumstantial evidence instruction based upon Easlick, which was the leading Oklahoma case on circumstantial evidence at the time of Petitioner's trial.  The Easlick opinion itself directs the modification of the uniform jury instruction concerning circumstantial evidence, and explains how the new instruction should read.  Easlick, 90 P.3d at 559 n.3.  The instruction given by the trial court comports exactly with these instructions.  Compare OUJI CR 9-5, with O.R. 175, with Easlick 90 P.3d at 559

n.3.  Petitioner's contention that the instruction given by the trial court did not accurately reflect Oklahoma law concerning circumstantial evidence is simply wrong.

Liberally construing the arguments in the petition, Ground Seven could be read to assert a claim that Petitioner's due process rights were violated by the retrospective application of Easlick to the events for which Petitioner was tried.[4]  However, that claim does not entitle Petitioner to federal habeas relief either.  In Rogers v. Tennessee, 532 U.S. 451 (2001), the Supreme Court considered the applicability of ex post facto principles to judicial decision making: "[D]ue process limitations on the retroactive application of judicial interpretations of criminal statutes [only apply] to those [decisions] that are unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." 532 U.S. at 461 (internal quotations omitted).  "The test for determining whether the retroactive application of a judicial decision violates due process is essentially one of foreseeability. A decision is unforeseeable if it is unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue." Fultz v. Embry, 158 F.3d 1101, 1103 (10th Cir. 1998) (quotations and citations omitted).

The Easlick decision does not meet this standard.  As the Oklahoma Court of Criminal Appeals explained, the concerns underlying the reasonable alternative hypothesis standard eliminated by Easlick were no longer an issue, so the opinion does nothing more than bring

---

[4] Petitioner committed the acts for which he was convicted on April 7, 2004.  Vol. 2 Tr. 37. His trial spanned from August 29-31, 2005.  Vol. Tr. 1, Vol. 2 Tr. 1, Vol. 3 Tr. 1.  Easlick was decided on May 3, 2004, while Petitioner was awaiting trial.  See Easlick, 90 P.3d 556.

Oklahoma law concerning circumstantial evidence "in accord with the vast majority of jurisdictions" Easlick, 90 P.3d at 559, and in line with Holland v. United States, 348 U.S. 121, 139-49 (1954), which held "if a proper reasonable doubt instruction is given, a jury need not be instructed that the circumstantial evidence must be so strong as to exclude every reasonable hypothesis other than guilt."  Thus, the decision cannot be characterized as "unforseeable."

Further, even assuming that the Oklahoma Court of Criminal Appeals' decision to abandon the reasonable hypothesis test in Easlick was unforeseeable, the error was harmless in light of the evidence.  See Clark v. Brown, 442 F.3d 708, 726 (9th Cir. 2006) (conducting harmless error analysis on issue of retroactive application of judicial law).   Under the pre-Easlick standard, a conviction based solely on circumstantial evidence was subject to the "reasonable hypothesis" test, which required that the evidence exclude every reasonable hypothesis other than guilt.  See, e.g., Hooks v. State, 19 P.3d 294, 305 (Okla. Crim. App. 2001).   Had the Oklahoma Court of Criminal Appeals employed this test in analyzing Petitioner's conviction it would have concluded that the evidence was sufficient to sustain Petitioner's conviction, because, for the aforementioned reasons, the evidence both established beyond a reasonable doubt that Petitioner manufactured and possessed methamphetamine in addition to possessing marijuana, and excluded every reasonable hypothesis but Petitioner's guilt.  Accordingly, neither the claims alleged in Ground Six nor Ground Seven entitle Petitioner to federal habeas relief.

**5.     Ineffective Assistance of Counsel**

In Ground Eight, Petitioner challenges the effectiveness of trial counsel's assistance. Specifically, Petitioner contends that trial counsel rendered deficient performance by failing to adequately litigate certain issues in connection with the search of his garage and Ms. Glidewell's apartment.  He complains that trial counsel did not adequately challenge the length of time police spent inside Glidewell's apartment prior to obtaining a warrant, did not adequately challenge the police decision to remove a key off his belt to search the garage, and did not establish a timeline to show how long it took to search Glidewell's apartment, when they turned to search the garage, or whether the searches were completed prior to the time the warrant was obtained.  Petition, p. 34.  Additionally, he argues that trial counsel should have, but did not, develop the record concerning the police efforts to ascertain whether the garage belonged to Ms. Glidewell's apartment (versus the upstairs tenant's) to support an argument that it was not part of the curtilage of her apartment.  He also complains that trial counsel did not contemporaneously object at trial to the admission of evidence obtained as a result of the search.  Id. at 35.  Further, Petitioner contends that trial counsel performed deficiently by failing to object to the "improper" impeachment of Petitioner alleged in Ground Five, failing to object to the "erroneous" jury instructions discussed in Grounds Six and Seven, and failing to ensure that a record of the jury charge conference was made.  Id.

On direct appeal, the Oklahoma Court of Criminal Appeals determined that Petitioner

did not show "either by record evidence or extraneous evidence, that he was prejudiced in the manner counsel represented him at trial."  Response, Ex. 3, p. 6.  Respondent contends that this conclusion is not contrary to nor an unreasonable application of clearly established Supreme Court precedent concerning ineffective assistance of counsel claims.  Specifically, as to counsel's alleged deficiencies in litigating Fourth Amendment issues, Respondent notes that Petitioner suffered no prejudice because the Fourth Amendment issues Petitioner contends his trial counsel should have raised were resolved against him on direct appeal. Response, p. 16.  As to the argument concerning counsel's failure to object to the improper impeachment of Petitioner and failure to object to the Easlick-based jury instruction, Respondent notes that no error occurred and that the failure to press a meritless issue does not amount to ineffective assistance.  Id. at 16-17.

To establish that counsel was ineffective, a habeas petitioner must show (1) counsel's performance was constitutionally deficient and (2) counsel's deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Performance is deficient if counsel's "representation [falls] below an objective standard of reasonableness." Id. at 688. Errors are prejudicial if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694. Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the circumstances prevailing at that time.  Id. at 689. There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance."  Id.   Because both deficient performance and prejudice must be

established to prove ineffective assistance, it is appropriate to consider whether prejudice is shown from an alleged error without determining whether counsel performed deficiently. Id. at 697.

Petitioner has not established that counsel performed deficiently in connection with litigating the legality of the search of Glidewell's apartment and Petitioner's garage, and the seizure of the key to the garage from Petitioner's person because counsel took action to litigate the issue and Petitioner has not overcome the presumption that these actions amount to reasonably effective assistance.  Before Petitioner's trial, counsel moved to suppress evidence obtained in the search of Petitioner's garage.  Vol. 1 Tr. 6.[5]  Counsel argued that the search of Petitioner's garage exceeded the scope of the warrant authorizing them to search Glidewell's apartment and its curtilage.  Vol. 1 Tr. 7.  He suggested that Petitioner's garage was not part of the curtilage of Glidewell's apartment, and that police officers should have conducted a better investigation to determine whether the garage belonged to Ms. Glidewell or to someone else.  Vol. 1 Tr. 8.  However, that counsel did not litigate the legality of the search and seizure by pressing the exact points Petitioner raises, with the benefit of hindsight, does not mean counsel rendered deficient performance in connection with litigating the legality of the search.  Counsel moved to suppress the evidence seized within Petitioner's garage based upon an argument that the search of the garage exceeded the

_____

[5]While counsel should have filed a motion to suppress and attempted to have the motion ruled on prior to trial, it appears both the trial court and the Oklahoma Court of Criminal Appeals considered the motion on the merits.

scope of the warrant. Counsel's choice to litigate the issue by making this particular argument falls within the strong presumption that his actions are within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689. Indeed, counsel may have determined, as the Oklahoma Court of Criminal Appeals ultimately concluded, that Petitioner lacked standing to challenge the search of Glidewell's apartment, and opted to forego attempting to assert challenges to the search of the apartment. Petitioner has not established counsel's deficient performance in connection with presenting Fourth Amendment-based claims.

Turning to counsel's failure to contemporaneously object to the evidence obtained in the allegedly illegal search, Petitioner argues this error was prejudicial because the failure to object to the evidence waived his ability to litigate his Fourth Amendment claims on future review. Petition, p. 35. While it is true in general that the failure to preserve error precludes an appellate court from reviewing error, in Petitioner's particular case, the Oklahoma Court of Criminal Appeals reviewed the merits of Petitioner's illegal seizure of evidence claim for plain error even though counsel did not contemporaneously object to the evidence obtained in the allegedly illegal search and seizure. Response, Ex. 3, p. 3. Petitioner thus had a full and fair opportunity to have his Fourth Amendment claims heard on direct appeal even though counsel may not have perfectly preserved all of his evidentiary complaints. Thus, Petitioner has suffered no prejudice as a result of counsel's allegedly deficient performance in failing to contemporaneously object to evidence obtained in the allegedly illegal search.

Likewise, Petitioner is unable to establish ineffective assistance as a result of

counsel's acts and omissions relating to the jury instructions.  As discussed at length in the preceding sections of this Report and Recommendation, the jury instruction concerning prior bad acts and the <u>Easlick</u>-based instruction on circumstantial evidence were both correct. Accordingly, counsel's failure to object to these instructions is not deficient performance because counsel has no obligation to make meritless arguments.  <u>See</u> <u>United States v. Cook</u>, 45 F.3d 388, 393 (10th Cir. 1995).

Moreover, no prejudice stems from the fact that the entirety of the discussions concerning the instructions were not made a part of the record.  The trial court made a record of whether either counsel objected to the included instructions or requested the inclusion of other instructions in order to preserve instruction-related issues for appeal.  Vol. 3 Tr. 66-68. Petitioner did assert instruction-based claims of error on direct appeal, which the Oklahoma Court of Criminal Appeals reviewed on their merits.  <u>See</u> Response, Ex. 3, p. 6. Given that Petitioner's instruction claims were reviewed on their merits, no prejudice flows from the lack of a record documenting the entirety of the instruction conference.

### 6.    Cumulative Error

Petitioner's Ground Nine argument is that the cumulative effect of the errors alleged to have occurred at trial deprived him of the right to a fundamentally fair trial.  Petition, pp. 36-37.  A cumulative-error analysis aggregates all the errors that individually have been found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they are not harmless.  <u>United States v. Rivera</u>, 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc).  Because cumulative-error analysis "does not apply to the

cumulative effect of non-errors," Petitioner must first show that two or more actual errors occurred before relief is justified.  See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998).  But since the undersigned has determined that the Petitioner presents no meritorious claims, his cumulative error argument is unavailing.

### 7.    Newly Discovered Evidence

Finally, Petitioner contends he is entitled to a new trial based upon the discovery of new evidence.  Petition, p. 38.  The "newly discovered evidence" Petitioner claims was unavailable at the time of his trial consists of testimony that Honey Glidewell gave at the trial of Donald Foglesong which, according to Petitioner, tended to exculpate him.  Specifically, according to Petitioner, at Foglesong's trial Glidewell testified that Petitioner did not manufacture methamphetamine, and that she was the only person operating the methamphetamine laboratory discovered inside her house.  Id. at 40, Ex. F.  According to Petitioner, Glidewell provided this testimony at Fogelsong's trial, which occurred in March of 2006 while Petitioner's direct appeal was pending, after she plead guilty in December 2004 to several charge stemming from the events for which Petitioner was also tried.  Id. at 38-39; see Case No. CF-2004-2261, District Court of Oklahoma County, Docket.

Respondent contends that Petitioner's newly discovered evidence claim is unexhausted and subject to an anticipatory procedural bar.  Response, p. 19.  Respondent also contends that Petitioner has not shown cause and prejudice to excuse the application of the procedural bar to his claims.  Id. at 20.  In his reply brief, Petitioner argues that the merits of his newly discovered evidence claim should be heard because he attempted to present it to

the state courts for review.  Reply, pp. 10-14.

"When questions of procedural bar are problematic . . . and the substantive claim can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits."  Cannon v. Mullin, 383 F.3d 1152, 1159 (10th Cir. 2004); accord Snow v. Sirmons, 474 F.3d 693, 717 (10th Cir. 2007).   As Petitioner's newly discovered evidence claim can be readily resolved on its merits without delving into issues concerning the applicability of procedural bars, the undersigned addresses this claim on its merits.

Newly discovered evidence generally does not warrant habeas relief absent an independent constitutional violation.  Clayton v. Gibson, 199 F.3d 1162, 1180 (10th Cir. 1999).  Indeed, as the Supreme Court explained in Herrera v. Collins:

> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding . . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact.

506 U.S. 390, 400 (1993).  See also Allen v. Beck, No. 05-5168, 179 Fed. Appx. 548, 551 (10th Cir. May 16, 2006) ("Such a free standing claim of actual innocence is not available in this non-capital case.").  "Typically . . . newly discovered evidence of actual innocence may serve only to satisfy the fundamental miscarriage of justice exception that excuses a petitioner's procedural default and permits a court to address an otherwise barred constitutional claim." Clayton, 199 F.3d at 1180.

In the foregoing sections of this Report and Recommendation, the undersigned has determined that Petitioner has not shown that any independent constitutional violations occurred in the underlying state criminal proceedings.  Accordingly, he may not obtain federal habeas relief on the basis of any allegedly newly discovered evidence.  For this reason, his newly discovered evidence claim does not warrant federal habeas relief.

## IV.   EVIDENTIARY HEARING

Lastly, Petitioner urges the Court to grant him an evidentiary hearing.  See generally, Motion for Evidentiary Hearing, pp. 1-6.  Respondent has not addressed this request.  See generally, Response, pp. 1-21.

A habeas court's ability to hold an evidentiary hearing is limited.  See 28 U.S.C. § 2254(e)(2).  "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that" his claim relies on: (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence."  Id. § 2254(e)(2)(A)(i)-(ii).  A petitioner has failed to develop his claim if "there is a lack of diligence, or some greater fault" on his part.  Young v. Sirmons, 486 F.3d 655, 679 (10th Cir. 2007), cert. denied 128 S. Ct. 1269 (2008).  "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."  Boyle v. McKune, 544 F.3d 1132, 1135 (10th Cir. 2008).

If a petitioner crosses this hurdle, he still must show that the facts underlying his claim

would "establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." § 2254(e)(2)(B). This is so because "an evidentiary hearing is unnecessary if the claim can be resolved on the record." <u>Anderson v. Att'y Gen. of Kan.</u>, 425 F.3d 853, 859 (10th Cir. 2005).

Assuming for the moment that Petitioner has diligently pursued the factual development of his claims in state court by requesting an evidentiary hearing, before he is entitled to an evidentiary hearing, he must show that his allegations, if true and not controverted by the existing record, would entitle him to habeas relief. <u>See</u> <u>Hammon v. Ward</u>, 466 F.3d 919, 927 (10th Cir. 2006). Petitioner has no made such a showing here. As the foregoing sections of this Report and Recommendation have discussed, none of the grounds of relief alleged in the Petition entitle him to federal habeas relief, and Petitioner's claims maybe resolved by reference to the record alone without the need to obtain additional evidence. Accordingly, Petitioner's request for an evidentiary hearing should be denied.

## RECOMMENDATION

For the aforementioned reasons, the undersigned recommends that the petition for writ of habeas corpus [Doc. No. 1] and Motion for Evidentiary Hearing [Doc. No. 4] be denied. The Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by January 6, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and

legal questions contained herein.   Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 17th day of December, 2008.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE